## TALLEY v. SCHLATITZ et al., Appellants.

Division Two, March 1, 1904.

1. **EJECTMENT: Reformation.** A deed can not be reformed in ejectment to correspond with the intention of the parties.

2. **SHERIFF'S DEED: Reformation: Intention.** A sheriff's deed can not be reformed to correspond to the intention of the sheriff in selling land for taxes. The sheriff has no interest in the land, and his intention to sell the land which was described in the judgment instead of the land described in his deed, has no place in the case.

3. ————: **Wrong Notice.** A sheriff, under an execution in a suit for taxes, can not make a good deed to the land if it is wrongly described in the notice of sale.

4.————: ————: **Two Descriptions in Deed.** Where the first description in the sheriff's deed recites a judgment for taxes against a certain piece of land, and the deed further recites that the sheriff gave notice by publication of the sale of another tract, and that he sold the last tract, and then conveys the last described tract to the purchaser, the deed does not convey any land whatever.

Appeal from Bollinger Circuit Court.—*Hon. Jas. D. Fox,* Judge.

AFFIRMED.

*Moses Whybark* for appellants.

(1) The policy of the law is to uphold judicial sales. Strouse v. Drennan, 41 Mo. 297. (2) Where a deed contains two inconsistent descriptions, that description which the whole instrument shows best expresses the intention of the parties must prevail. Whitaker v. Whitaker, 74 S. W. 1031. (3) The part of a deed which undertakes to describe the premises conveyed is always construed with great liberality, and a deed is never to be so construed as to render it void if any other construction can be given it. Grigsby v. Aken, 28 N. E. 180 (128 Ind. 591). (4) While the rules for the construction of sheriff's deeds are somewhat different from that of ordinary deeds *inter partes,* yet this difference does not extend to the description of the property conveyed. In this regard the rules are the same whether the deed be made by a party in his own right, or by an officer of the court. White v. Luning, 93 U. S. 514. (5) The court should either have rejected the second description of the land as set out in the sheriff's deed to defendants, or substituted the word "west" for the word "east" where it occurs in that description. The word "east" is plainly erroneous, and in conflict with the whole context of the deed, and all of its recitals and references, as well as in conflict, with the antecedent description of the land set out in the deed, and to which antecedent description all of the

recitals refer.   17 Am. and Eng. Ency. Law (2 Ed.),
pp. 19-20, and notes; 1 Greenleaf on Ev. (Redfield's
Ed.), sec. 301; Briant v. Garrison, 150 Mo. 668; Thomp-
son v. Thompson, 115 Mo. 67; Whitaker v. Whitaker,
74 S. W. 1029; Johnson v. Boulware, 149 Mo. 446; Rail-
road v. View, 156 Mo. 608; Agan v. Shannon, 103 Mo.
661; Evans v. Green, 21 Mo. 170; Presnell v. Dale, 141
Mo. 187; White v. Luning, 93 U. S. 514.   (6)   Talley
had owned this land ever since the deed from Presnall
to him was made in 1860, nearly forty years before the
sale.   It adjoined the village of Sedgewickville, and
was in the same section.   He owned no other land ex-
cept these two small parcels described in the deed from
Presnall to him.   Their location, and especially the
thirty-six and one-half acres involved in this suit, was
well understood and known.   It was called the "Talley
land."  No one could be deceived in the land when called
by this name.   An ownership by one man of a small
tract of land adjoining a village for nearly forty years
is of itself an identification of the land.   The Talley
thirty-six and one-half acres in section 26, township 33,
range 10, was sold by the sheriff, and that identified
and located the land; and defendant testifies that he
bought the Talley thirty-six and one-half acres at Sedge-
wickville, and he went into the possession of the land
he bought, and plaintiff brought no suit against him for
the possession of the land for nearly two years after
he bought, although he had been sued for the taxes
against the land, and knew that judgment would be
rendered against him because he was served with pro-
cess by personal service in the tax suit in August, 1895,
and a copy of the petition delivered to him in which this
thirty-six and one-half acres was correctly described,
and in which no other part of the land conveyed by
Presnall to him was described.   Cravens v. Pettit, 16
Mo. 210; Sailor v. Gilfillen, 73 Mo. App. 152; Hammond
v. Johnson, 93 Mo. 198; Adkins v. Moran, 67 Mo. 100;
McPike v. Allman, 53 Mo. 551.

*W. M. Morgan* for respondent.

BURGESS, J.—This is an action of ejectment for the possession of sixty acres of land, described by metes and bounds, in Bollinger county.

The petition is in the usual form and the answer a general denial. The case was tried before the court, a jury being waived. The trial resulted in a judgment in favor of plaintiff for the possession of the land and forty-eight dollars damages. Defendants in due time filed motion for a new trial, which was overruled and they bring the case to this court by appeal for review.

The facts, briefly stated, are substantially as follows:

On the 25th day of February, 1860, the plaintiff acquired by deed from Esau Presnall and wife the title to about sixty acres of land, including the land in question, in section twenty-six, township thirty-three, range ten east, in Bollinger county. The land was in two parcels, one of which contained about twenty acres, and is located in the northwest quarter of the southeast quarter of the section, and the other containing thirty-six acres and a half located in the southwest quarter of the northeast quarter of the section, and joins the twenty acre parcel on the north. The thirty-six acres and a half parcel is described in the deed from Presnall and wife to Talley as follows:

"All of the southwest quarter of the northeast quarter of section 26, township 33, range 10, not heretofore conveyed by the said first parties (Presnall and wife), to Christopher Seabaugh."

The part conveyed to Christopher Seabaugh was a small three-cornered lot, containing three and a half acres, out of the forty acres, to which neither Talley nor the defendants ever made any claim.

On the 6th day of August, 1895, the collector of the revenue of Bollinger county instituted suit in the circuit

court of said county against the plaintiff herein, Jesse R. Talley, to enforce a lien for the delinquent taxes for the years 1891, 1892, and 1893 against this thirty-six and one-half acre tract, in which it is described in the petition and the tax bill upon which the suit was predicated as "Tract No. 1-36, 50 acres, part of S. W. ¼ of N. E. ¼ of section 26, township 33, range 10 east." Personal service of process was had on Talley who was the defendant in that suit on the 8th day of August, 1895. At the September term, 1895, of said circuit court, judgment by default in the suit for taxes was rendered against Talley for the amount of taxes sued for and costs, enforcing a lien against the thirty-six and fifty one-hundredths acres of land, describing it just as it was described in the petition and taxbill in that suit.

Thereafter, on the first of February, 1896, a special execution was issued by the clerk of the circuit court on this judgment, directed to the sheriff of Bollinger county, and returnable to the March term, 1896, of the Bollinger Circuit Court. This execution describes the land the same as the taxbill, petition and judgment.

The sheriff sold the land under this execution, and defendant Schlatitz for himself and codefendant Pohlmann, his son-in-law, who was not at the sale, bought the land for $50, and the sheriff made a deed to them by name of Schlatitz and Pohlmann, for the southeast quarter of the northeast quarter of section twenty-six, township 33, range 10, and acknowledged it in open court on the 11th of March, 1896. The sale was made by the sheriff on March 10, 1896, at the regular March term, 1896, of the Bollinger County Circuit Court.

In this deed the sheriff recites the date of the judgment and the issue of the special execution against this land, describing it precisely as described in all of the proceedings in the tax suit, and also, "that by virtue of the special execution directing him to sell said real estate, on the 3d of February, 1896, he levied on said real estate, and that on the 10th day of March, 1896,

between the hours of nine o'clock in the forenoon and five o'clock in the afternoon of said day, agreeably to notice, at the courthouse door in my said county of Bollinger, and during the session of the circuit court in said county, at the March term thereof, 1896, he did expose to sale at public auction for ready money, the above described real estate; and Schlatitz and Pohlmann being the highest bidders for the following described real estate, viz.: thirty-six acres and fifty one-hundredths, part of southeast quarter of northeast quarter of section 26, township 33, range 10, the said last named above tract was stricken off to the said Schlatitz and Pohlmann for the sum bid therefor by them, as above set forth. Now, therefore, in consideration of the sum of fifty dollars to me, said sheriff, in hand paid by said Schlatitz and Pohlmann, the receipt of which I do hereby acknowledge, and by virtue of the authority in me vested by law, I, David S. Mann, sheriff as aforesaid, do hereby assign, transfer and convey to the said Schlatitz and Pohlmann all of the above described real estate, so stricken off and sold to them that I might sell as sheriff as aforesaid by virtue of the aforesaid judgment, execution and notice.''

The land is described accurately in the first part of the deed, but in describing the part struck off and sold at the sale located it in the southeast quarter of the northeast quarter of section 26, while the judgment and execution were against the first described tract. Talley never owned any part of the southeast quarter of the northeast quarter of the section.

It was admitted by the parties that in the sheriff's notice of sale he advertised the land as 36.50 acres, part of southeast quarter of northeast quarter of section 26, township 33, range 10.

The defendant Schlatitz testified that he had no information that the land was wrongly described in the notice, and did not learn of it for sometime after he bought the land. That Talley's brother first told him

that his title was not good, because the land was wrongly advertised. That he bought at the sale the Talley thirty-six and fifty one-hundredths acres. That he did not hear the sheriff read his notice of sale, as he was not there then. That he was not there until they were bidding on the land, when he happened to come up, and someone told him they were selling the Talley land, and only bidding a dollar for it, and he asked if it was the tract at Sedgewickville, and was told it was, and he then said that he would give $5 if it was not worth anything; and his bid was $5; and this was the first he knew of it; and he then ran the land up to $50, and became the purchaser.

Plaintiff did not ask any declarations of law, but the defendants asked the court to declare the law of the case as follows:

"1.  If the court finds from the evidence that under the execution sale for taxes, made by the sheriff of Bollinger county, in the case of the State of Missouri, at the relation and to the use of Moses Limbaugh, collector of the revenue of Bollinger county, Missouri, plaintiff, against Jesse Talley, defendant, said sheriff in the notice of the execution sale, advertised by him in the Marble Hill Press, a newspaper published in the county and State aforesaid, failed to describe the land sued for in this case, and which he was directed to sell by the execution in said tax cause, but, in said notice of sale, he advertised other and different land than that he was directed by said execution to sell; yet if the court further finds from the evidence that he sold at said sale the land he was directed by said execution to sell, and the land involved in this suit, and defendants at said sale bid upon the same, and became the purchasers thereof; and that they did not know that it was wrongly described in the notice of the execution sale, nor ascertained such fact until they had purchased, and paid the sheriff for the land, and after the deed read in evidence in this cause, was executed to them, then, and in that

case, the misdescription in the notice given by the sheriff of the execution sale aforesaid, will not effect the title of the defendants acquired by them at said sale, and the court will not find the issues against them for the reason that the land was not advertised by the sheriff.

"2. The court further declares the law to be that the deed made by the sheriff of Bollinger county, Missouri, to the defendants, read in evidence, transferred the legal title to the defendants to the lands described in this suit, and the defendants are therefore entitled to recover."

The court gave declaration of law numbered one asked by defendants, but refused the second, and defendants saved exceptions.

Defendants in order to maintain the sheriff's deed under which they claim title, invoke the same rules with respect to the sale of the property by the sheriff and the construction of his deed to them, that applies to deeds *inter partes;* at the same time they concede that the rules of construction of sheriff's deeds are somewhat different from deeds made by contract, but they insist that this difference does not extend to the description of the property conveyed.

In this position defendants are sustained by the decision of the Supreme Court of the United States in White v. Luning, 93 U. S. 514, wherein it is held, with respect to the description of property conveyed, that the rule of construction is the same, whether the deed be made by a party in his own right or by an officer of the court. But the question presented by this appeal is as to which one of two tracts, both being *correctly described according to the Government survey,* if either, passed by the sheriff's deed upon which defendants rely in support of their defense.

It is well settled that in order to effectuate the intention of the parties to a deed words omitted may be added, changed, transposed or rejected, if the context

shows what was the intention, and the meaning obvious. [Briant v. Garrison, 150 Mo. 655; Whitaker v. Whitaker, 175 Mo. 1.]   It is clear, however, that, if such description as exists in the sheriff's deed in this case were found to exist in a deed *inter partes,* it could be corrected in a suit in equity for that purpose (Whitaker v. Whitaker, supra), but not by construction in a collateral proceeding as is attempted in this case.   In the sale by the sheriff the owner of the land intended nothing.   The law through its officer, the sheriff, was acting in hostility to him, for the purpose of enforcing the collection of the judgment, and the sheriff had no interest whatever in the land, but was merely the instrumentality by which whatever interest Talley may have had in it, if any, might be sold under the execution, and that interest conveyed by him as such sheriff by deed to the purchaser.   But no such correction as is attempted in this case could be made—nor could an action be maintained against the sheriff to correct the deed, it matters not what his intentions were when he made it, for the obvious reason that he had no interest in the land, and it makes no difference that the defendant in the execution did not in fact own the land that was attempted to be conveyed by the sheriff's deed.   So that the question of intent has no place in this discussion, nor was extrinsic evidence admissible for the purpose of showing such an intent.   The rule of *caveat emptor* applies to all execution sales.

The deed recites that while the sheriff exposed to sale at public auction for ready money, the real estate first described in the deed, Schlatitz and Pohlmann were the highest bidders for the following described real estate, viz.:

"Thirty-six and fifty hundredths acres, part of the southeast quarter of the northeast quarter of section 26, township 33, range 10, the *said last above described tract was stricken off and sold to the said Schlatitz and Pohlmann* for the sum bid therefor by them as above

set forth.   Now, therefore, in consideration of the premises and the sum of fifty dollars, to me, the said sheriff, in hand paid by said Schlatitz and Pohlmann, the receipt whereof I do hereby acknowledge, and by virtue of the authority in me vested by law, I, David S. Mann, sheriff as aforesaid, do hereby assign, transfer and convey to the said Schlatitz and Pohlmann all the above described real estate, *so stricken off and sold to them,* that I might sell as sheriff as aforesaid, by virtue of the aforesaid judgment, execution and notice.   To have and to hold the right, title, interest and estate hereby conveyed unto the said Schlatitz and Pohlmann, their heirs and assigns, forever, with all the rights and appurtenances thereto belonging.''

It will be observed that the deed not only recites that Schlatitz and Pohlmann were the highest bidders for the land last described in the deed, but that it was stricken off and sold to them for the sum of fifty dollars which was paid to him, in consideration of which he sold and transferred to them *"all of the above described real estate, so stricken off and sold to them,"* not the land first described in the deed, but the land ''so stricken off and sold to them.''   So that, as it is conceded by defendants that they must stand or fall in this case upon the deed in question, and that they can not obtain a new deed under the provisions of section 3218, Revised Statutes 1899, because the notice of sale erroneously described the land, and as in an amended deed the sheriff can not state that he gave the proper notice, defendants are without remedy.

In conclusion we desire to say that we do not wish to be understood as holding that if the deed were in other respects a valid deed, the description of the land is sufficiently definite to pass the title.   Upon this question we express no opinion.   Our conclusion is that the judgment should be affirmed.   It is so ordered.

*Gantt, P. J.,* concurs; *Fox, J.,* not sitting.